[S. F. Nos. 17412, 17517.   In Bank.   Mar. 31, 1949.]

JOHN I. SILVA, Respondent, v. CLEM MERCIER,
Appellant.

Rogers & Clark, Webster V. Clark and Bruce F. Allen for Appellant.

James F. Galliano and C. Paul Paduck for Respondent.

CARTER, J.—In an action for damages and injunctive relief plaintiff, a representative of a dairy workers' union, on behalf of the union members and himself, obtained a preliminary injunction restraining the breach of a collective bargaining agreement between the union and defendant, the employer.

On August 29, 1946, a minute order was entered in this action directing the issuance of a preliminary injunction, and on January 23, 1947, a formal written order directing the issuance of a preliminary injunction upon the filing of an undertaking by the plaintiff in a specified amount was signed and filed by the trial judge. A separate appeal was taken from each of these orders. A question has been raised as to which order is the final appealable one, but by reason of the record and stipulation of the parties, it is clear that the final appealable order was that of January 23, 1947. Therefore, the appeal from the minute order, S. F. No. 17412, should be dismissed.

The preliminary injunction granted by the court restrained defendant employer from employing or continuing to employ any workmen unless such workmen make application for and become members of plaintiff union. It was based upon the complaint and supporting affidavits on file. No counter-affidavits were filed.

It appears that on June 1, 1943, defendant employer and the union entered into a trade agreement wherein it was provided that: "Section I. Recognition of the Union: The Employer hereby recognizes the Union as the sole collective bargaining agency for all employees working for the Employer and within the jurisdiction of the Union, who are, at the time of the signing of this agreement, or thereafter become members of the Union.

"Section II. Employment: All non-union milkers presently employed or hereafter hired by the Employer shall make application for membership into the Union within seven (7) days from the date of the signing of this agreement, or from the date of hiring by the Employer (whichever the case may be), and each shall become a member of the Union in good standing

within thirty (30) days from the date of said hiring unless the Union's action is delayed beyond said 30-day period. Whenever the Union is unable to furnish a milker in emergencies the Employer shall be free to provide his own emergency milker for the emergency but such milker must be replaced by a Union milker when one is available.

"Any employee suspended or expelled by the Union for violation of the Constitution and By-Laws of the Union shall, upon seven (7) days written notice being given by the Union, be laid off until such time as he shall have become reinstated in the Union." Following the foregoing there are set forth wage schedules, hours, duties of employees, working conditions, and means for settling disputes under the agreement.

Defendant is charged in the complaint with retaining in his employ employees who have failed to join the union.

■ Clearly the purport of the agreement is that, while the defendant employer may hire nonunion employees, such employees as well as those in his employment at the date of the agreement must, within the prescribed time, apply for membership and become members of the union. Any other construction would make meaningless the provisions in section II (above quoted) for application for membership within seven days. Section II is explicit that *all* nonunion milkers now or hereafter employed *shall* make application for membership in the union within the specified time and each *shall* become a member within a certain time. The terms are capable of only one construction, namely, that all of defendant's employees must become members of the union.

It is true, as argued by defendant, that there is no provision in the contract that all employees must be members of the union, in those words, but the words used express that meaning. There is a difference between *becoming* a member of the union and being such at the outset, that is, being a member when employed. The latter situation was the case in the contracts involved in such cases as *Montaldo* v. *Hires Bottling Co.*, 59 Cal.App.2d 642 [139 P.2d 666]; *Ribner* v. *Rasco Butter & Egg Co.*, 135 Misc. 616 [238 N.Y.S. 132]; *Harper* v. *Local Union No. 520, I. B. of E. W.* (Tex. Civ. App.), 48 S.W.2d 1033; and *Hudson Bus Transportation Drivers' Association* v. *Hill Bus Co.*, 121 N.J.Eq. 582 [191 A. 763]. In those cases each employee was required to be a member *when employed.* In the instant case that is not required. The employer may hire a nonunion personnel but the employee must thereafter become a member of the union. But that does

not make the agreement any the less clear that there is a requirement that the employees become members after employment. The agreement as a whole is a collective bargaining arrangement between the employer and the union as representative of the employees. If the employees were not required to become union members, and the union would represent only union members, there might be little left upon which the agreement could operate where the employer decided to have a wholly nonunion staff. It is not to be supposed that the parties intended to have their solemn agreement subject to such complete ineffectiveness. It is true, as pointed out by defendant, that the phrase in section I (who would become members of the union) conveys the inference that some of the employees may not be union members, but that means lacking that status when employed. They still must *become* members after employment as required by section II. Nor do the specific provisions relative to emergency employees or employees expelled from the union in the last two sentences of section II change the construction of the agreement. The provision dealing with emergency milkers merely carries out and applies to a specific situation, it being the general purport of the agreement that the employer may hire a nonunion worker but that all employees must become union members. The last sentence covers the specific instance of an expelled union member who might not be embraced within the general provision requiring all employees to become members of the union.

The foregoing discussion also disposes of defendant's contention that the agreement is not sufficiently certain to warrant the granting of injunctive relief. The inevitable implication is that defendant must not retain employees who do not become members of the union. Likewise, properly interpreted, the agreement does not require the employer to compel employees he hires to join the union. It means that he cannot retain them unless they join the union. Thus it cannot be said that defendant by the injunction is being ordered to compel a third person to do something—to compel his employees to join the union. He must discharge them if they do not become union members.

It is urged that the contract is no longer in effect by reasons of a clause therein that it shall remain in "full force and effect until six months after the cessation of the present war." It is earnestly argued by plaintiff that the war is not over until there has been a joint congressional or presidential

proclamation to that effect or until peace treaties have been signed with the various enemy nations; and by defendant that the war ended when Japan surrendered in August, 1945; that that is the commonly accepted date of the termination of the war and the parties used the words "cessation of the present war" in their common and popular sense. There are cases interpreting such clauses in both statutes and contracts and varying results have been reached. (See, cases collected, 168 A.L.R. 173; 47 Columb.L.Rev. 255.)

The foregoing argument need not be settled by this court inasmuch as on the face of the proceedings defendant is barred from maintaining his position. The contract (§ X) provides that the parties desire to settle amicably matters of difference and for that purpose "upon the execution of this agreement a Trade Board shall be organized, to be composed of three representatives of each contracting party. The Trade Board shall elect a Chairman and Secretary and adopt rules of procedure. Meetings of the Trade Board may be called by the Chairman thereof and must be called by him upon request of any two members of said Board. Notice of meeting shall be given in writing at least three days prior to the date thereof. All disputes and questions between employer and employee or between the parties hereto relative to the meaning, *interpretation* or alleged violation of the provisions of this contract shall be referred to said Board, and the decision of the majority of the members of the Board upon any matter referred to it pursuant to the terms of this agreement *shall be final* and shall be enforced by the parties hereto." [Emphasis added.] Following the above, provision is made for settling disputes by first a mediator and then an arbitrator when the "Trade Board" is "unable to arrive at a satisfactory settlement" within four days. On December 26, 1945, the "Trade Board" decided that "cessation of the present war" meant when a joint declaration by Congress was made that the war is over.

When an agreement provides for the determination by a third person or persons of some proper matter to be settled and that the decision shall be final, a submission to and determination by him or them of the matter is binding on the parties. That is true whether the arrangement is technically a common law or statutory arbitration or something akin thereto. (See, *Cockrill* v. *Murphis,* 68 Cal.App.2d 184 [156 P.2d 265]; *Rives-Strong Bldg.* v. *Bank of America,* 50 Cal. App.2d 810 [123 P.2d 942]; 3 Cal.Jur. 67-70.) As above

seen, the contract in the instant case authorizes the "Trade Board" to "interpret" the contract, thus empowering it to give meaning to the phrase "cessation of the present war." There can be no escape from the conclusion that the determination of said board is binding upon the parties to this action.

There is nothing here to impeach or show any irregularity in the determination of the "Trade Board." Defendant's only contention is that he was not accorded a hearing by the board when it made its determination.

It must be remembered that we have before us an order granting a preliminary injunction based upon the verified complaint of plaintiff and supporting affidavits, and the trial court accepted them as true. It is alleged in the complaint that pursuant to section X of the agreement (the section providing for the settlement of disputes by the "Trade Board") "there has been and is now, . . . a regularly and duly established Trade Board for the purpose of functioning in accordance with said Section X, and particularly for the purpose of deciding disputes and questions between employer and employee or between the parties to said contract relating to the meaning, interpretation or alleged violations of the provisions of said contract.

"That on December 26, 1945, the said Trade Board *duly and regularly convened, pursuant* to said Section X, and then and there *regularly and duly determined and decided* the meaning and interpretation of the words 'six months after the cessation of the present war' appearing in Section XI of said collective bargaining agreement as meaning 'six months after a joint declaration by The Congress of the United States that said war is terminated." [Emphasis added.] Hence we must conclude that, assuming a hearing was necessary, a hearing with notice was given and that the action of the "Trade Board" was regular in all respects. What may develop at the trial with reference to the action of the "Trade Board," or whether its action is binding, or what may be shown to be the intent of the parties as to the meaning of the words, "cessation of the present war," is not now of concern.

It has been held that the issue of whether a contract containing an arbitration clause exists, or is still in effect, is not within the purview of the arbitration clause for the reason that if there is no contract there is no provision for arbitration. (*Hanes* v. *Coffee*, 212 Cal. 777 [300 P. 963]; *Stetson* v. *Orland Oil Syndicate, Ltd.*, 42 Cal.App.2d 139 [108 P.2d 463];

*Friedlander* v. *Stanley Productions,* 24 Cal.App.2d 677 [76 P.2d 145]; see, *Abraham Lehr, Inc.* v. *Cortez,* 57 Cal.App.2d 973 [135 P.2d 684]; *Johnson* v. *Atkins,* 53 Cal.App.2d 430 [127 P.2d 1027]; 6 Williston on Contracts [rev. ed.] § 1920, p. 5369.) It has also been held that where there has been a submission and an award (in the absence of fraud, at least) the award is binding although the arbitration contract has limitations. (See, Rest. Contracts, §§ 445, 550; Williston on Contracts [rev. ed.] §§ 1920, 1927.) Regardless of the interpretation which may be given generally to the phrase, "cessation of the present war," the submission and determination in the instant case was made before the contract would have terminated and was merely to interpret the contract. Under those circumstances we believe the determination was binding insofar as the case now presented is concerned.

It has been suggested that since the determination by the arbitrators that the words used in the contract, "cessation of the present war," meant that the war would not be over until after the adoption of a "joint declaration by The Congress of the United States that said war is terminated," and since the order of the trial court here involved, the joint resolution of Congress of July 25, 1947 (U. S. Code Cong. Serv., 80th Cong., 1st session, pp. 453-456), and the declaration of the President on December 31, 1946, that hostilities had ceased (U. S. Code Cong. Serv. 79th Cong., 2d session [1946], p. 1759), are pertinent. It is doubtful that the joint resolution has any bearing on the situation inasmuch as it does not purport to declare the war terminated. It is entitled a resolution to "terminate certain emergency and war powers." It is said therein: "The following *statutory* provisions are hereby repealed," and then lists them. In any event, whether such resolution was within the contemplation of the arbitrators' determination should be decided by the trial court with any competent evidence that will throw light thereon. The same comment is applicable to the President's declaration.

The appeal, S. F. No. 17412, is dismissed. The order granting the preliminary injunction (appeal S. F. No. 17517) is affirmed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied April 28, 1949.