**SCHNEIDER, INC., a Pennsylvania Corporation, Plaintiff,**

v.

**RESEARCH–COTTRELL, INC., a New Jersey Corporation, Defendant.**

**Civ. A. No. 78–386.**

United States District Court, W. D. Pennsylvania.

July 17, 1979.

---

Frederick J. Francis, Meyer; Unkovic & Scott, Pittsburgh, Pa., for plaintiff.

J. Frank McKenna, III, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

## OPINION

DIAMOND, District Judge.

Plaintiff, Schneider, Inc., and defendant, Research-Cottrell, Inc., were parties to an agreement under which plaintiff was to erect and install certain electrostatic precipitation equipment and auxiliaries at a project in Homer City, Pennsylvania. Plaintiff claims that as a result of defendant's deceit plaintiff was required to purchase and utilize considerably more materials in completing performance than it believed the contract originally specified. However, in spite of the dispute that arose when plaintiff discovered this discrepancy, it continued work without interruption until performance of the contract was completed then brought this diversity action seeking to recover payment for the additional work it performed.

Presently under consideration by the court is defendant's motion to stay these proceedings pending arbitration of the claim in the State of New Jersey. Defend-

ant contends that a provision of the contract requires the parties to resort to arbitration rather than the courts for resolution of this type of dispute. Plaintiff argues that arbitration is not proper either because (a) the instant dispute is not within the ambit of the arbitration provision, or (b) its assent to that provision was fraudulently induced. For the reasons set forth below, we will grant the motion to stay.

The arbitration provision at issue is ¶ 56 of the contract which provides as follows:

"56.0 ARBITRATION OF DISPUTES

56.1 All claims, disputes and other matters in question arising out of, or relating to, this subcontract or the breach thereof, except for claims which have been waived by the mailing or acceptance of final payment, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law of the State of New Jersey and arbitration proceedings shall take place in that state. The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

56.2 Notice of the demand for arbitration shall be filed in writing with the other party to the subcontract and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

56.3 The subcontractor shall carry on the work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and purchaser in writing."

While the parties disagree as to whose law governs the interpretation of the above provision, the defendant contending that New Jersey law applies and that it would stay these proceedings, and plaintiff arguing that Pennsylvania law governs and that it would not stay them, we need not resolve this conflicts of law problem, since, as we indicate later, we believe that both New Jersey and Pennsylvania would require the issuance of a stay under the circumstances of this case.

We first address the question of whether the present dispute is within the ambit of ¶ 56, looking initially to the law of Pennsylvania. Pennsylvania statutes provide that arbitration agreements are enforceable, and if satisfied that a dispute is within the scope of such an agreement, courts are empowered to stay legal proceedings pending arbitration.[1] Plaintiff does not question this as being the law of Pennsylvania.

---

1. 5 P.S. § 161 provides:

"A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

5 P.S. § 162 provides:

"If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall, on application of one of the parties made before the suit or proceeding is at issue, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Rather, it argues that the instant claim is beyond the scope of ¶ 56 because the duty to arbitrate thereunder expired when the contract was terminated, which in this case was when plaintiff completed performance. Plaintiff cites the following Pennsylvania and Third Circuit cases in support of its position: *Westmoreland Hospital Association v. Westmoreland Construction Co.*, 423 Pa. 255, 223 A.2d 681 (1961); *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964); *Hussey Metal Division v. Lectromelt Furnace Division*, 471 F.2d 556 (3rd Cir. 1972). And these cases do appear to lend weight to plaintiff's argument. However, the Pennsylvania Supreme Court's later ruling in *Chester City School Authority v. Aberthaw Construction Company*, 460 Pa. 343, 333 A.2d 758 (1975) erodes whatever support *Westmoreland Hospital* and *Emmaus* may have provided, and, we believe, is entirely dispositive of the issue concerning the scope of ¶ 56.

In *Chester* the plaintiff school authority terminated a contract with the defendant contractor as a result of defendant's refusal to perform certain repair work and thereafter sued for breach of the contract. The defendant moved to have the suit stayed pending arbitration and cited the arbitration provision of the contract, which provided as follows:

"7.10 ARBITRATION

7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payments as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to

arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

7.10.2 Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

7.10.3 The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing."

The court held that a stay was proper even though the demand for arbitration was made after the expiration of the contract, ruling that *Emmaus* was distinguishable on the ground that its arbitration clause, unlike the one in *Chester*, contained a provision specifically requiring that a demand for arbitration be made no later than the date of final payment.[2] The court held that the inclusion of such a clause indicated that the parties intended the duty to arbitrate to expire when the contract did. Because we believe that the rationale of the court in *Chester* is particularly applicable here, we quote therefrom at length:

"We believe the trial court's reliance upon our decision in *Emmaus*, supra, was misplaced. There the Court, after careful consideration of the agreement, concluded that the parties intended that the

2. Although the court does not refer to *Westmoreland Hospital*, we believe it is to be distinguished on the same basis, since it too required

the demand for arbitration to be made prior to the date of final payment.

obligation to arbitrate should not survive the termination of the agreement.

'The reason we infer that the arbitration clause in this contract was not intended to survive this contract is contained in the sentence in Clause B4:08 of the contract which says that a demand for arbitration shall be filed in no case later than the time for final payment. This language indicates that the parties only intended the arbitration clause to be used during the life of the operation of the contract and not to extend after the contract had been terminated by performance, breach or otherwise. The arbitration clause also contains a sentence which says that the contractor shall not cause delay of the construction during any arbitration proceedings. This language also indicates that the parties intended the arbitration procedure to be utilized only during the life of the contract and not after the termination of the contract.' *Emmaus Municipal Authority v. Eltz*, supra 416 Pa. at 126, 204 A.2d at 927. The instant contract has no provision comparable to clause B4:08 which was contained in the contract under consideration in *Emmaus*, supra. However, the Chancellor and appellee have laid great stress upon the similarity between § 7.10.3 of the instant contract and the second clause referred to in the *Emmaus*, supra decision requiring that there should not be delays in construction during any arbitration proceedings. This clause, however, read in context with the other pertinent provisions, does not justify the conclusion that the parties intended the obligation to arbitrate to end at the termination of the agreement.

First the clear and unambiguous language of § 7.10.1 rejects any interpretation that the agreement should be construed as narrowly as suggested by the appellee and the court below. To accept the view urged would render the first sentence of § 7.10.1 which provides for 'all claims, disputes and other matters in question . . . arising out of, or relating to, this Contract *or the breach thereof*, . . . shall be decided by arbitration . . .' without meaning.

In the clearest terms conceivable, the drafters of § 7.10.1 have included within the ambit of disputes to be subjected to arbitration, those breaches that would give rise to the repudiation or termination of the contract. It is therefore completely inconsistent to suggest that a unilateral repudiation or termination was intended to foreclose the right to resort to arbitration.

Further, an interpretation which would permit one party to extinguish the right of the other to proceed with arbitration of its claim by unilateral termination of the contract, would result in rendering the provision meaningless and the protection provided thereunder illusory. Additionally, such a construction is diametrically opposed to the liberal interpretation our cases have recently stressed that arbitration agreements should receive.

Any question that may have been left after a consideration of § 7.10.1 is completely eliminated after consideration of § 7.10.2. (Footnote omitted) It is clear that the parties, by this section, expressly set forth the perimeters of the obligation to arbitrate and in so doing, did not state that the termination or repudiation of the agreement should be a factor. To the contrary, it set time limits, such as the applicable statute of limitations, which in most instances, would be expected to extend well beyond the termination of the contract.

In our view, § 7.10.3 was only to provide for continuation of work in those areas not related to the disagreement. It clearly was not an attempt to further amend § 7.10.2 which set forth the time limitations on the right to demand arbitration." *Chester,* at p. 353–5, 333 A.2d at p. 763–64.[3]

3. The Third Circuit has also ruled that it is the presence of a clause requiring demand to be made prior to "a certain date" which indicates the parties did not intend the duty to arbitrate to extend beyond termination of the contract. See *Gavlik Construction Co. v. H. F. Campbell*

It appears to us that in all pertinent respects—including specifically the absence of a provision requiring that a demand for arbitration be made prior to final payment—the arbitration provision here is virtually identical to that in *Chester*. It follows, therefore, that under Pennsylvania law the instant matter is within the scope of ¶ 56.

 While plaintiff does not argue New Jersey law, relying instead on its claim that Pennsylvania law applies, we nevertheless consider whether a stay is proper under New Jersey law and the language of ¶ 56. The statutes of New Jersey also provide that arbitration agreements are enforceable and that stays may be ordered when a court determines that the dispute is within the scope of arbitration.[4]

We have found only one New Jersey case on point, *Hudik-Ross, Inc. v. 1530 Palisade Avenue Corp.*, 131 N.J.Super. 159, 329 A.2d 70 (1974), and we believe that it too is contra to plaintiff's position. In *Hudik-Ross* appellant-owner, 1530 Palisade Avenue Corp., sought reversal of a lower court ruling denying a stay pending arbitration of a construction contract dispute. Appellee-contractor, Hudik-Ross, Inc., had sued the appellant-owner for final payment on a construction project after appellant had refused to make said payments on the ground that appellee had used inadequate materials and performed work improperly during construction. Palisade had moved to have the suit stayed pending arbitration, citing the arbitration clause in the parties' contract which in relevant part provided:

"Arbitration Article VII. All questions that may arise under this contract and in the performance of the work hereunder shall be submitted to arbitration at the choice of either of the parties hereto. The demand for arbitration shall be filed in writing with the party against whom it is sought. Each of the parties shall, within three days after such demand, name one arbitrator and they shall select a third arbitrator . . .."

The lower court had entered an order to stay and to arbitrate, then dissolved it, and in arguing for affirmance of the dissolution ruling *Hudik-Ross* asserted that because the dispute did not arise until after the project had been completed, it could not be said to have involved questions that "may arise under this contract and in the performance of the work." The court rejected that argument holding:

"In our view *Hudik-Ross'* construction of the contract provision is hypertechnical. If they were correct in their interpretation, any dispute between the parties would have had to have been resolved by immediate arbitration while the work was still in progress. A more reasonable interpretation would make subject to the arbitration clause any question relating to the contract and involving the manner in which the work was performed. This interpretation is strengthened by the strong public policy in favor of arbitration reflected in N.J.S.A. 2A:24–1 et seq. Cf. *Public Utility Workers v. Public Service Co.*, 35 N.J.Super. 414, 114 A.2d 443

Co., 526 F.2d 777 (3rd Cir. 1975). The only language in ¶ 56 requiring demand by a certain date is that referring to the statute of limitations. However, we do not believe that is the sort of "certain date" *Gavlik* contemplated. In any event, *Chester* is the ultimate expression of Pennsylvania law, and its arbitration clause also required the demand to be made prior to the running of the applicable statute of limitations.

4. N.J.S.A. 2A:24–1 provides:
"A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24–2 of this title, any

existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."
N.J.S.A. 2A:24–4 provides:
"In an action brought in any court upon an issue arising out of an agreement providing for the arbitration thereof, the court, upon being satisfied that the issue involved is referable to arbitration, shall stay the action, if the applicant for the stay is not in default in proceeding with the arbitration, until an arbitration has been had in accordance with the terms of the agreement."

(App.Div.1955), certif. den. 19 N.J. 333, 116 A.2d 828 (1955); *United Steelworkers v. Warrior & G. Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)." *Hudik-Ross*, 329 A.2d 73 at p. 73.

This holding is consistent with that in *Chester*, and we conclude, therefore, that under New Jersey law the present dispute would be deemed to be within the ambit of ¶ 56.

Plaintiff also contends that the arbitration clause is unenforceable since plaintiff's assent thereto was fraudulently induced. The essence of this argument is that plaintiff would not have agreed to the arbitration provision had it known that defendant fraudulently misrepresented the amount of materials needed to complete the project, because plaintiff intended to arbitrate only "routine and customary" disputes which frequently plague construction projects, not unusual disputes such as fraud, which plaintiff contends are more properly handled by the courts rather than arbitration panels. Plaintiff's Brief p. 19.

Both Pennsylvania and New Jersey hold that a fraudulently induced agreement is not enforceable.[5] However, in *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975) Pennsylvania adopted the rule stated by the Supreme Court in *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270, 1276 (1967), that except where the parties express a different intention, "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the *arbitration clause itself*, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." (Emphasis supplied). Since there does not appear to be any New Jersey law on this point, we must predict what the New Jersey Supreme Court would rule if confronted with this question, and, as the Third Circuit correctly predicted Pennsylvania would do, it is our opinion that New Jersey would adopt the Supreme Court's *Prima-Paint* rule. See *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, 387 F.2d 768 (3rd Cir. 1966).

Applying the *Prima Paint* rule to this case, it is clear that plaintiff has not made the requisite allegation which if proven would void the arbitration clause. Plaintiff argues that it satisfies the *Prima Paint* rule by its specific assertion that it agreed to the arbitration provision because it believed no fraud existed regarding the materials requirements of the contract. However, this is just another way of alleging that plaintiff would not have assented to *any* of the provisions of the contract had it believed that it was being defrauded as to any other—an allegation which is probably true in every case, certainly in this one where the alleged fraud goes to the very essence of the contract, but precisely the one made and rejected in *Prima Paint*. Both merely allege a fraud going to the contract *generally* rather that one specifically "directed to the arbitration clause itself." Obviously, to accept plaintiff's argument would be to render *Prima Paint* meaningless, for it would permit a party to avoid arbitration in every instance of fraud by simply claiming that if it was aware of a fraud going to one aspect of the contract—regardless of what provisions of it were *specifically* and *directly* affected thereby—it would not have assented to the balance of the contract including the separate arbitration provision. We reject that argument.

In accordance with the foregoing, a stay of these proceedings will be ordered. The question remains, however, whether we will enforce the provision of ¶ 56 which requires arbitration to take place in the State of New Jersey. Since this is a forum non-conveniens question, an evidentiary hearing will be necessary.

---

5. See 5 P.S. § 161 at fn. 1, supra, and N.J.S.A. 2A:24–1 at fn. 4, supra.