[S.F. No. 24568. Dec. 29, 1983.]

ERICKSEN, ARBUTHNOT, McCARTHY, KEARNEY & WALSH, INC., Plaintiff and Respondent, v.
100 OAK STREET et al., Defendants and Appellants.

COUNSEL

Randall I. Barkan and Sternberg & Barkan for Defendants and Appellants.

William G. Hoback and Ericksen, Arbuthnot, McCarthy, Kearney & Walsh for Plaintiff and Respondent.

OPINION

GRODIN, J.—The question presented here is whether a party to an agreement which includes an arbitration clause may bypass the arbitral process, and invoke the jurisdiction of the courts, by asserting that the agreement itself was the product of fraud. We conclude, in accord with the United States Supreme Court and the overwhelming majority of state courts which have considered the question, that the arbitration commitment is severable from the underlying agreement and that where, as in this case, the arbitration clause may reasonably be construed to encompass the fraud claim, the entire dispute should be resolved through arbitration.

*Facts and Procedural History*

The underlying dispute concerns a lease executed by plaintiff and respondent Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc., an Oakland law firm, hereinafter referred to as Ericksen, and 100 Oak Street, a California limited partnership which owns a three-story office building in Oakland. The lease, dated August 15, 1979, was for a five-year term and pro-

vided that Ericksen would occupy the first floor of the 100 Oak Street building, starting November 15, 1979.

Shortly after it occupied the premises, Ericksen began complaining that the air conditioning in the building was defective. Halfway through the lease term, Ericksen vacated the premises, moving to another office during Memorial Day weekend, 1982.

Notwithstanding a lease clause in which it agreed to arbitrate "[i]n the event of any dispute between the parties hereto with respect to the provisions of this Lease exclusive of those provisions relating to payment of rent," Ericksen filed suit on June 30, 1982. The complaint sought damages and declaratory relief and alleged a breach of the implied covenant of quiet enjoyment; breach of the implied warranty of habitability; frustration of purpose; simple breach of contract; constructive eviction; and fraud. Ericksen claimed it was entitled to rescind the agreement, and sought general and punitive damages.

Within a few days after it was served with the complaint, 100 Oak Street filed a petition to compel arbitration of the dispute (Code Civ. Proc., § 1281.2), and to stay the civil proceedings. Ericksen filed a response in which it admitted that it and 100 Oak Street had "entered into a written agreement requiring that the controversy alleged in the petition to be submitted to arbitration," but asserted that "[g]rounds exist for revocation of the agreement to arbitrate the alleged controversy in that [Ericksen] was falsely and fraudulently induced to enter into the lease agreement." On the basis of this general and unverified allegation,[1] the trial court denied 100 Oak Street's petition, and this appeal followed.

## Discussion

Code of Civil Procedure section 1281.2 provides, in relevant part: "On the petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and

---

[1]Ericksen's complaint, also unverified, alleged in part that before and after the signing of the lease defendants "falsely and fraudulently, and with intent to deceive and defraud the plaintiff, represented to plaintiff that the leased premises were in a tenantable condition," and that those representations were false, and known to be false, because "in truth the air conditioning was inadequate, making the leased premises untenantable." At oral argument before this court, Ericksen's attorney confirmed that this was the fraud referred to in its response to the petition to compel arbitration.

Ericksen's complaint also asserted that there had been a mutual rescission of the agreement, but this was not a stated ground for opposing arbitration in the trial court.

the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: . . . [¶] (b) Grounds exist for the revocation of the agreement."

The language of the statute on its face would not appear to countenance the trial court's view that the mere general assertion of fraud in an unverified response is sufficient basis for the denial of a petition to compel arbitration. Rather, the statute calls for a "determination" by the court as to the existence of the requisite agreement, and manifestly no such determination has been made.

There exists a more fundamental question, however, and that is whether the California Arbitration Act contemplates that a court, confronted with an agreement containing an arbitration clause and a petition to compel arbitration, will preliminarily entertain and decide a party's claim that the underlying agreement (as distinguished from the agreement to arbitrate) was procured by fraud. The question is one of first impression in this state. ■ ■■■ (See *Sauter* v. *Superior Court* (1969) 2 Cal.App.3d 25, 29, fn. 2 [82 Cal.Rptr. 395].)[2] We therefore turn to decisions of the federal courts and the courts of our sister states for guidance.

---

[2]Ericksen relies on cases which have held that when the issue of *illegality* of the contract has been raised, judicial determination is required, and the arbitrator's decision on legality does not bind the court.

In *Loving & Evans* v. *Blick* (1949) 33 Cal.2d 603 [204 P.2d 23], this court dealt with an agreement which, because it had been executed by an unlicensed contractor in violation of statute, was unenforceable. (*Id.*, at p. 607.) The plurality opinion by Justice Spence asserted that it would violate public policy to allow a party to enforce through arbitration what it could not enforce through litigation. (33 Cal.2d at p. 614.) The plurality declared that the court, and not the arbitrator, must determine the issue of illegality of the entire transaction (*id.*, at p. 609); it cited earlier cases holding that the power of the arbitrator to determine the rights of the parties is dependent upon a valid contract; in the absence of a valid contract no such rights can arise and the arbitrator has no power to determine "such nonexistent rights." (*Id.*, at p. 610; accord, *Silva* v. *Mercier* (1949) 33 Cal.2d 704, 709 [204 P.2d 609].)

In *Bianco* v. *Superior Court* (1968) 265 Cal.App.2d 126 [71 Cal.Rptr. 322], plaintiffs sought rescission of contracts to purchase interests in oil and gas leases, asserting that these were securities issued without a permit and that defendants falsely and fraudulently represented that no permit was necessary to induce plaintiffs to invest. (*Id.*, at pp. 127-128.) The court reversed a trial court order compelling arbitration, holding that the trial court should have determined whether, as plaintiffs asserted, grounds existed for revocation of the agreement, i.e., defendants illegally failed to obtain a permit. The reversal was predicated upon failure of the trial court to *determine* whether grounds existed for revocation, and the apparent illegality of the contract. (*Id.*, at pp. 129-130.) The court noted in passing that plaintiffs "also claim the right to rescission by reason of defendant's false and fraudulent representations that no permit was necessary." This allegation *and the illegality* showed that grounds existed for revocation of the agreement, the court held. (*Id.*, at p. 130.) Properly read, *Bianco* is an illegality case.

The illegality cases are distinguishable. As the *Loving* plurality noted, it would violate public policy to allow a party to do through arbitration what it cannot do through litigation. Also, it has been recognized that a claim of illegality in an incidental clause of the contract,

## I. *The Federal Rule*

In *Robert Lawrence Company* v. *Devonshire Fabrics, Inc.* (2d Cir. 1959) 271 F.2d 402, cert. dism. (1960) 364 U.S. 801 [5 L.Ed.2d 37, 81 S.Ct. 27], plaintiff sought damages for allegedly fraudulent misrepresentations made by defendant in inducing it to pay for a quantity of woolen fabric, which, plaintiff claimed, was not of "first quality" as the agreement provided. Defendant moved to stay the suit pending arbitration pursuant to a provision of the sales agreement calling for arbitration of "[a]ny complaint, controversy or question which may arise with respect to this contract that cannot be settled by the parties thereto." The trial court denied the stay on the ground that the existence of a valid contract was a question which must first be determined by the court.

The court of appeals, in what proved to be a seminal decision on this issue, reversed. Calling the trial court's approach an "oversimplification of the problem," the court held that the federal arbitration statute "envisages a distinction between the entire contract between the parties on the one hand and the arbitration clause of the contract on the other." (271 F.2d at p. 409.) Such a construction was compelled, the court reasoned, not only by the language of the statute[3] but also by other pertinent considerations as

---

that falls short of affording grounds for revocation of the entire contract, is subject to arbitration. (*California State Council of Carpenters* v. *Superior Court* (1970) 11 Cal.App.3d 144, 157 [89 Cal.Rptr. 625].) Arbitrators can decide questions of law (*id.*, at p. 158), and "It is of the very nature of the arbitration process that it should not be halted upon the claim the arbitrators will make an illegal award." (*Id.*, at p. 163.)

Claims of fraud in the inducement of the contract which are intertwined with performance of the agreement present a wholly different issue than that considered in *Loving* and *Bianco*. Questions of public policy which are implicated by an illegal agreement, and which might be ill-suited for arbitral determination, are not presented when garden-variety "fraud in the inducement," related to performance failure, is claimed. The latter is ideally suited for the arbitrator's expert determination.

Plaintiff also relies on the statement in *Silva* v. *Mercier* (1949) 33 Cal.2d 704, 709 [204 P.2d 609], that "the issue of whether a contract containing an arbitration clause exists, or is still in effect, is not within the purview of the arbitration clause for the reason that if there is no contract there is no provision for arbitration." That statement is of little guidance, however, since the court held that the arbitral board's determination was binding and the statement is therefore dictum.

As the Court of Appeal stated in *Sauter* v. *Superior Court, supra,* 2 Cal.App.3d 25, 29, footnote 2: "Whether a claim that the whole contract is void may be made the subject of arbitration is a question yet unsettled. (See *Bianco* v. *Superior Court,* 265 Cal.App.2d 126 [71 Cal.Rptr. 322]; cf. *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.,* 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]; *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313].) The question seems to be to what extent the arbitration clause can be considered a separate contract independent of the underlying contract, and thus immune from claims of the underlying contract's invalidity."

[3]The United States Arbitration Act provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

well. "Historically arbitration clauses were treated as separable parts of the contract, although such treatment generally meant the agreement was being deprived of its efficacy. [Citations.] And since the passage of the [federal] Arbitration Act, the courts have similarly held that the illegality of part of the contract does not operate to nullify an agreement to arbitrate. [Citations.] Nor does the alleged breach or repudiation of the contract preclude the right to arbitrate. [Citations.] [¶] Finally, any doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties and to help ease the current congestion of court calendars. Such policy has been consistently reiterated by the federal courts and we think it deserves to be heartily endorsed." (271 F.2d at p. 410.)

Referring to the case before it, the court observed that "[t]he *issue of fraud seems inextricably enmeshed in the other factual issues of the case. Indeed, the difference between fraud in the inducement and mere failure of performance by delivery of defective merchandise depends upon little more than legal verbiage and the formulation of legal conclusions.* Once it is settled that arbitration agreements are 'valid, irrevocable, and enforceable' we know of no principle of law that stands as an obstacle to a determination by the parties to the effect that arbitration should not be denied or postponed upon the mere cry of fraud in the inducement, *as this would permit the frustration of the very purposes sought to be achieved by the agreement to arbitrate, i.e. a speedy and relatively inexpensive trial before commercial specialists.*" (*Id.*, at p. 410, italics added.) It would be different, the court suggested, if there were a claim, supported by a showing of substance, that the arbitration clause was itself induced by fraud, but "[i]t is not enough that there is substance to the charge that the contract to deliver merchandise of a certain quality was induced by fraud." (*Id.*, at p. 411.) Since the contract language was broad enough to include a claim of fraud in the inducement of the contract itself, that was a question for the arbitrator to determine.

In *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801], the United States Supreme Court confronted the *Devonshire* issue in the context of a consulting agreement in which Flood &

---

arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) California's statute, providing that the court shall order arbitration if it determines that an arbitration agreement exists, unless it determines that grounds exist for the revocation of the agreement (Code Civ. Proc., § 1281.2), is substantially similar and does not call for different construction.

Conklin agreed to perform certain services for and not to compete with Prima Paint. The agreement contained an arbitration clause providing that " '[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by arbitration in the City of New York, . . .' " (388 U.S. at p. 398 [18 L.Ed.2d at p. 1274].) Flood & Conklin, contending that Prima had failed to make a payment under the contract, sent Prima a notice requesting arbitration. Prima responded with an action in federal district court to rescind the entire consulting agreement on the ground of fraud. The fraud allegedly consisted of Flood & Conklin's misrepresentation at the time the contract was made, that it was solvent and able to perform the agreement, when in fact it was completely insolvent. Flood & Conklin moved to stay Prima's lawsuit pending arbitration of the fraud issue. The lower courts, relying on the Second Circuit's decision in *Devonshire,* held that the action should be stayed to permit arbitration of the issue.

The Supreme Court noted it was the view of the Second Circuit in *Devonshire* and other cases that *"except where the parties otherwise intend—*arbitration clauses . . . are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud. [Fn. omitted.]" (388 U.S. at p. 402 [18 L.Ed.2d at pp. 1276-1277], italics in original.) And, the high court adopted the *Devonshire* rule as a proper interpretation of the federal statute, binding upon federal courts in suits involving agreements subject to that statute—i.e., maritime contracts and those evidencing transactions in "commerce."[4] (388 U.S. at pp. 403-404 [18 L.Ed.2d at pp. 1277-1278].) "In so concluding," the court stated, "we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." (*Id.,* at p. 404 [18 L.Ed.2d at p. 1277].)

The United States Supreme Court in *Moses H. Cone Memorial Hosp.* v. *Mercury Const., supra,* 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927] has

---

[4]The argument was made in *Prima Paint* that under *Erie R. Co.* v. *Tompkins* (1938) 304 U.S. 64 [82 L.Ed. 1188, 58 S.Ct. 817], federal courts were bound to follow state law which, assertedly, called for a different result on the issue in dispute. The Supreme Court responded to that argument by stating: "The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. [Citation.] Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative." (388 U.S. at p. 405 [18 L.Ed.2d at p. 1278].) The Supreme Court has subsequently held that the federal statute creates a body of federal substantive law of arbitrability, "applicable to any arbitration agreement within the coverage of the Act." (*Moses H. Cone Memorial Hosp.* v. *Mercury Const.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 785, 103 S.Ct. 927, 941].)

recently reconfirmed *Prima Paint,* stating its holding in broad terms,[5] and approving an even broader, derivative, proposition which had been accepted by the courts of appeals: "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (460 U.S. at pp. 24-25 [74 L.Ed.2d at p. 785, 103 S.Ct. at pp. 941-942].)

## II. *The Rule in Other States*

The high courts of our sister states with cognate arbitration acts have followed the rule in *Prima Paint* with near unanimity. (See generally, Annot., Claim of Fraud in Inducement of Contract as Subject to Compulsory Arbitration Clause Contained in Contract (1982) 11 A.L.R.4th 774, 780-784; see also, Domke, The Law and Practice of Commercial Arbitration (1968) § 8.02, pp. 57-60, and 1983 cum. supp., pp. 24-25 (Domke).) The only exceptions appear to be Louisiana, where the rule has been rejected (*George Engine Co., Inc.* v. *Southern Shipbldg. Corp.* (La. 1977) 350 So.2d 881), and Minnesota, where the rule has been modified to permit a party asserting fraud to obtain judicial determination of that issue provided he seeks rescission of the contract in toto. (*Atcas* v. *Credit Clearing Corporation of America* (1972) 292 Minn. 334 [197 N.W.2d 448].)

The treatment of this issue in New York, where courts have had the longest and most extensive exposure to arbitration law, is particularly instructive. In 1957, prior to *Prima Paint,* the New York Court of Appeals interpreted that state's arbitration law to mean that fraud in the inducement of a contract was an issue for the court, and not for the arbitrators. (*WrapVertiser Corporation* v. *Plotnick* (1957) 3 N.Y.2d 17 [163 N.Y.S.2d 639, 143 N.E.2d 366].) After *Prima Paint* the court reversed itself and adopted the federal rule on the basis of legal and policy arguments which it found "compelling." (*Weinrott* v. *Carp* (1973) 32 N.Y.2d 190 [344 N.Y.S.2d 848, 298 N.E.2d 42, 47].) The theoretical underpinning of its prior rule

---

[5]"In *Prima Paint Corp.* v. *Flood & Conklin Mfg. Corp.* . . . for example, the parties had signed a contract containing an arbitration clause, but one party alleged that there had been fraud in the inducement of the entire contract (although the alleged fraud did not go to the arbitration clause in particular). The issue before us was whether the issue of fraud in the inducement was itself an arbitrable controversy. We held that the language and policies of the Act required the conclusion that the fraud issue was arbitrable. [Citation.]" (460 U.S. at p. 24 [74 L.Ed.2d at p. 785, 103 S.Ct. at p. 941].)

had been the concept that an arbitration agreement was not separable from the principal contract, so that if the substantive provisions of the contract were to fall, the entire contract including an arbitration clause would fall with it. (*Id.*, at p. 46.) But the court observed, "[j]udicial intervention, based upon a nonseparability contract theory in arbitration matters prolongs litigation, and defeats, as this case conclusively demonstrates, two of arbitration's primary virtues, speed and finality [citations]." (*Id.*, at p. 47.) The case had reached the court of appeals after a five-year "long and tortuous journey" (*id.*, at p. 43), in which the unsupported allegation of fraud "laboriously worked its way through the New York court system" and finally "fell exhausted at the Court of Appeals." (*Id.*, at p. 47.) Such conduct "has the effect of frustrating both the initial intent of the parties as well as legislative policy." (*Ibid.*)

An "additional and desirable result" of its decision, the New York court noted, was to bring that state's law in accord with federal law as declared in *Prima Paint,* thus avoiding the awkwardness of applying different rules depending upon whether the case involved a contract subject to the federal statute.[6] "[I]t is a rather technical distinction to apply one law or another depending on whether interstate commerce is involved. If we were to adhere to our former approach, we would be making the existence of interstate commerce (or the lack of it) determinative with respect to the application of the arbitration provision. Clearly no party makes a decision on the scope of arbitration based on whether the contract in question involves interstate commerce." (298 N.E.2d at p. 48, fn. 2.)

Most other state courts, voicing similar policy concerns, have followed the New York approach. (See, e.g., *Quirk* v. *Data Terminal Systems, Inc.* (1980) 379 Mass. 762 [400 N.E.2d 858, 11 A.L.R.4th 767], and cases cited therein; *National Camera, Inc.* v. *Love* (Colo.App. 1982) 644 P.2d 94; *Two Sisters, Inc.* v. *Gosch & Co.* (1976) 171 Conn. 493 [370 A.2d 1020]; *Flower World of America, Inc.* v. *Wenzel* (1978) 122 Ariz.App. 319 [594 P.2d 1015]; *Security Construction Co.* v. *Maietta* (1975) 25 Md.App. 303 [334 A.2d 133]; *Schneider, Inc.* v. *Research-Cottrell, Inc.* (W.D.Pa. 1979) 474 F.Supp. 1179, 1185 [applying Pennsylvania and guessing at New Jersey law]; *Pinkis* v. *Network Cinema Corporation* (1973) 9 Wn.App. 337 [512 P.2d 751] [applying federal law]. See generally, Annot., *supra,* 11

---

[6]The New York Court of Appeals had previously held, at a time when it was unclear whether state courts were obligated to apply the *Prima Paint* rule to contracts covered by the federal arbitration statute, that as a matter of policy—to avoid conflict and forum shopping—federal law should be applied. (*A/S J. Ludwig Mowinckels Rederi* v. *Dow Chem. Co.* (1970) 25 N.Y.2d 576 [307 N.Y.S.2d 660, 255 N.E.2d 774, 775, 777], cert. den. (1970) 398 U.S. 939 [26 L.Ed.2d 272, 90 S.Ct. 1844].)

A.L.R.4th 774, 780-783; Domke, *supra,* 1983 cum. supp., § 8.02, pp. 24-25.)

### III. *Evaluation*

Contrary to plaintiff's contention, the majority rule, as reflected in cases like *Prima Paint, Devonshire,* and *Weinrott,* is compatible with California's arbitration statute. The difference between Code of Civil Procedure section 1281.2, which calls for arbitration unless grounds exist for revocation of the agreement, and the federal statute, which mandates arbitration "save upon such grounds as exist at law or in equity for the revocation of any contract" is inconsequential, and does not require or point to a different rule. Likewise, the New York statute, calling for arbitration when "there is no substantial question whether a valid agreement was made or complied with" (N.Y. Civ. Prac. Law, § 7503, subd. (a) (1980 McKinney)), is harmonious. As in the case of these statutes, the term "agreement" may properly be construed to refer to the agreement to arbitrate, as distinguished from the overall contract in which that agreement is contained. (*Weinrott* v. *Carp, supra,* 298 N.E.2d at p. 47.)

In addition, the majority rule is in accord with this state's strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (See, e.g., *Christensen* v. *Dewor Developments* (1983) 33 Cal.3d 778 [191 Cal.Rptr. 8, 661 P.2d 1088]; *Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 595 [183 Cal.Rptr. 360, 645 P.2d 1192], U.S. Supreme Ct. jur. postponed until hg. on the merits, *sub nom. Southland Corp.* v. *Keating* (1983) 459 U.S. 1101 [74 L.Ed.2d 948, 103 S.Ct. 721]; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699 [131 Cal.Rptr. 882, 552 P.2d 1178].) ■ ■ ■ ■ This is particularly true in cases such as this, where parties of presumptively equal bargaining power have entered into an agreement containing a commitment to arbitrate by a procedure of unchallenged fairness,[7] and one of the parties seeks to avoid arbitration by asserting that the other party fraudulently induced the agreement because he never intended to perform. (See fn. 1, *ante.*) The difference between a breach of contract and such fraudulent inducement turns upon determination of a party's state of mind at the time the contract was entered into, and we ought not close our eyes to the practical consequences of a

---

[7]Where an arbitration clause is part of a contract of adhesion, courts will carefully scrutinize the agreement to assure that the arbitration provisions fall within the reasonable expectations of the weaker, or "adhering" party, and are not unduly oppressive or "unconscionable." (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 820 [171 Cal.Rptr. 604, 623 P.2d 165]; see also, *Keating* v. *Superior Court, supra,* 31 Cal.3d 584, 593-595.)

rule which would allow a party to avoid an arbitration commitment by relying upon that distinction.

California courts have observed in other contexts the dangers inherent in committing preliminary issues to the courts. "If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, 'the arbitral wheels would very soon grind to a halt.'" (*East San Bernardino County Water Dist.* v. *City of San Bernardino* (1973) 33 Cal.App.3d 942, 951 [109 Cal.Rptr. 510].) Referring preliminary issues to the courts can cause "'serious delay and confusion, thus robbing the arbitration procedure of much of its value to the parties.'" (*Ibid.*, fn. 3, citing Cal. Law Revision Com. Recommendation and Study on Arbitration (1960).) And, we have recently warned against "procedural gamesmanship" aimed at undermining the advantages of arbitration. (*Christensen* v. *Dewor Developments, supra,* 33 Cal.3d 778, 784.) A statutory interpretation which would yield such results is not to be preferred.

We conclude that this court should adopt the majority rule. ■ The scope of arbitration is, of course, a matter of agreement between the parties, and if they choose to limit that scope so as to exclude questions of fraud in the inducement of the contract that choice must be respected. In this state, as under federal law (*Moses H. Cone Memorial Hosp.* v. *Mercury Const., supra,* 460 U.S. 1 [74 L.Ed.2d 765, 785, 103 S.Ct. 927, 941]), doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. (*Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 690 [72 Cal.Rptr. 880, 446 P.2d 1000]; *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 490-491 [30 Cal.Rptr. 452, 381 P.2d 188]; *Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 695-696 [77 Cal.Rptr. 100].) Therefore, in the absence of indication of contrary intent, and where the arbitration clause is reasonably susceptible of such an interpretation, claims of fraud in the inducement of the contract (as distinguished from claims of fraud directed to the arbitration clause itself) will be deemed subject to arbitration.[8]

---

[8]As was observed in *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 27 [136 Cal.Rptr. 378], courts which follow the majority rule have held that fraud which "permeated the entire contract including the arbitration provision" vitiates the arbitration agreement and requires judicial determination. (E.g., *Moseley* v. *Electronic Facilities* (1963) 374 U.S. 167, 170-171 [10 L.Ed.2d 818, 820-821, 83 S.Ct. 1815]; *Weinrott* v. *Carp, supra,* 298 N.E.2d 42.) The permeation doctrine is inapplicable here because, "[c]ertainly this is not a case . . . where the defendant denied ever agreeing to anything." (*Robert Lawrence Company* v. *Devonshire Fabrics, Inc., supra,* 271 F.2d at p. 411.) Ericksen, a law firm, was concededly aware of the arbitration provision.

■ We proceed to apply these principles to the instant case, where the parties agreed to arbitrate "any dispute between the parties hereto with respect to the provisions of this Lease exclusive of those provisions relating to payment of rent." Although this language is not as broad as that considered in *Prima Paint* other cases have found allegations of fraud covered by quite similar arbitration clauses. (See, e.g., *J.P. Stevens & Co., Inc.* v. *Harrell International, Inc.* (Fla.App. 1974) 299 So.2d 69, cert. dism. (Fla. 1975) 313 So.2d 707.) Moreover, as in *Devonshire,* the issue of fraud which is asserted here "seems inextricably enmeshed in the other factual issues of the case." (271 F.2d at p. 410; see also *Comprehensive Merch. Cat., Inc.* v. *Madison Sales Corp.* (7th Cir. 1975) 521 F.2d 1210, 1214.) Indeed, the claim of substantive breach—that the air conditioning did not perform properly—is totally embraced within the claim of fraud—that the lessor knew, at the time of the lease, that the air conditioning would not perform. Thus, if the trial court were to proceed to determine the fraud claim it would almost certainly have to decide the claim of substantive breach as well, and the original expectations of the parties—that such questions would be determined through arbitration—would be totally defeated. However the fraud claim were determined, there would be virtually nothing left for the arbitrator to decide. We conclude that the arbitration clause is broad enough to include this claim of fraud in the inducement.

Accordingly, the judgment is reversed and the superior court is directed to vacate its order denying 100 Oak Street's petition to compel arbitration and to enter an order granting the petition.

Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

**MOSK, J.**—I dissent.

The majority establish a rule that earns a high rank in the cart-before-the-horse category. Instead of first requiring determination of whether the entire agreement was induced by fraud and then, if it was not, proceeding to arbitrate the issue of compliance with its terms, my colleagues order arbitration first and then sometime in the vague future the underlying validity of the very agreement which provided, among other matters, for the arbitration, is to be ascertained. This is resupination: logic and procedure turned upside down.

Code of Civil Procedure section 1281.2 provides that the court shall order arbitration "unless it determines that: . . . [¶] (b) Grounds exist for the revocation of the agreement." It seems obvious that the "it" refers to the

court, and that the Legislature intended the court, not the arbitrator, to determine if grounds exist for revocation of the agreement.

The majority rather curiously admit that the statute calls for determination by the court whether a valid agreement exists, and then they announce that "manifestly no such determination has been made." Obviously. Nor will it be made if the matter must proceed to arbitration before a court can ascertain whether the agreement was induced by fraud.

Another paragraph in Code of Civil Procedure section 1281.2 makes clear the legislative intent in a situation comparable to that before us. The statute declares: "If *the court determines* that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a *pending action* or special proceeding *between the petitioner and the respondent* and that a determination of such issues *may make the arbitration unnecessary,* the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies" (italics added).

Here again, the Legislature refers to "the court determines," not the arbitrator. It seems to cover our case: if the court finds there was fraud in the inducement of the underlying contract "a determination of such issues may make the arbitration unnecessary"; therefore the court may delay any order for arbitration until the fraud issue is heard and decided. As Justice Black said in another context, the language raises no doubts about its meaning "except to someone anxious to find doubts." (*Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395, 412 [18 L.Ed.2d 1270, 1282, 87 S.Ct. 1801] (dis. opn.).)

Pursuant to that section, the Court of Appeal in *Gustafson* v. *State Farm Mut. Auto. Ins. Co.* (1973) 31 Cal.App.3d 361 [107 Cal.Rptr. 243], held that the trial court should have determined the issue of waiver before ordering arbitration—that it was a matter for the court, not the arbitrator.

I cannot quarrel with federal decisions relied on by the majority, since they are based on provisions of the federal arbitration act, which in turn is bottomed on admiralty and the commerce clause of the federal Constitution. I must concede, however, that I find the decisions unpersuasive, for the federal act specifically exempts from arbitration all contracts that are invalid "upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) This would certainly seem to embrace fraud in the inducement, as alleged in the instant case.

That was the view expressed in the irrefutable dissent by Justices Black, Douglas and Stewart in *Prima Paint* v. *Flood & Conklin, supra,* 388 U.S. 395, 412-413 [18 L.Ed.2d 1270, 1282]: "Let us look briefly at the language of the Arbitration Act itself as Congress passed it. Section 2, the key provision of the Act, provides that '[a] written provision in . . . a contract . . . involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.'* (Emphasis added.) Section 3 provides that '[i]f any suit . . . be brought . . . *upon any issue referable to arbitration* under an agreement in writing for such arbitration, the court . . . *upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement,* shall . . . stay the trial of the action until such arbitration has been had . . . .' (Emphasis added.) The language of these sections could not, I think, raise doubts about their meaning except to someone anxious to find doubts. They simply mean this: an arbitration agreement is to be enforced by a federal court unless the court, not the arbitrator, finds grounds 'at law or in equity for the revocation of any contract.' Fraud, of course, is one of the most common grounds for revoking a contract. If the contract was procured by fraud, then, unless the defrauded party elects to affirm it, there is absolutely no contract, nothing to be arbitrated. Sections 2 and 3 of the Act assume the existence of a valid contract. They merely provide for enforcement where such a valid contract exists. These provisions were plainly designed to protect a person against whom arbitration is sought to be enforced from having to submit his legal issues as to validity of the contract to the arbitrator. The legislative history of the Act makes this clear." (Fn. omitted.)

Justice Fortas' prevailing opinion in *Prima Paint* observes that the First Circuit in *Lummus Company* v. *Commonwealth Oil Refining Co.* (1st Cir. 1960) 280 F.2d 915, certiorari denied, 364 U.S. 911 [5 L.Ed.2d 225, 81 S.Ct. 274], held that if the arbitration clause is regarded by a state as an inseparable part of the contract, a claim of fraud in the inducement must be decided by the court. The high court did not disapprove *Lummus*; it merely went on to distinguish federal court proceedings, based as they were in *Prima Paint* on a maritime contract.

The recent case of *Moses H. Cone Memorial Hosp.* v. *Mercury Const.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927], is not relevant. While the majority there appear to reaffirm *Prima Paint,* they make it abundantly clear they do so pursuant to the terms of the federal arbitration act, and that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." (*Id.* 460 U.S. at p. 24 [74 L.Ed.2d at

p. 785, 103 S.Ct. at p. 941.) Nothing in that opinion declares a rule preventing states from deciding that under state law fraud in the inducement renders an entire contract, including the arbitration clause, invalid and unenforceable. Indeed, the court based its decision on the "probable inadequacy of the state court proceeding" in North Carolina. (*Id.,* 460 U.S. 1 [74 L.Ed.2d at p. 786, 103 S.Ct. at p. 942.) I would not expect the high court to declare California judicial proceedings to be inadequate.

With due respect for the court of a sister state, I believe the opinion in *Weinrott* v. *Carp* (1973) 32 N.Y.2d 190 [344 N.Y.S.2d 848, 298 N.E.2d 42], reaches an untenable result. That court declares flatly (at p. 47): "the agreement to arbitrate would be 'valid' even if the substantive portions of the contract were induced by fraud." Incredible! What the court did, in effect, was to reward fraud by proceeding to process an agreement that by any known standards of contract law was an absolute nullity.

While there are a number of other state courts that support the conclusion of the majority here, I am persuaded by the Louisiana court. In *George Engine Co., Inc.* v. *Southern Shipbldg. Corp.* (La. 1977) 350 So.2d 881, 884-885, the court held that the issue of misrepresentation in the inducement of a contract is not to be submitted to arbitration even though the contract contains an arbitration clause. The court observed that under the Louisiana arbitration act an arbitration agreement was to be judicially enforced unless a court, not an arbitrator, found grounds at law or in equity for revocation of the contract. It reasoned that courts historically have had jurisdiction over legal issues presented by a petition to rescind a contract because of error in its inducement. Fraud in the inducement therefore was to be decided by the courts. The function of arbitrators, the court declared, is to resolve factual controversies arising out of valid contracts. It added that the courts are much better equipped than arbitrators to determine the legal question of misrepresentation or of fraud in the inducement of a contract.

It is one of the essential elements of a contract that the parties enter into it knowingly and consensually, not through fraud, duress, menace, undue influence or mistake. If consent to entering into a contract is obtained by any of the foregoing elements, a court may declare the entire contract to be unenforceable—the *entire* contract, without exception for any single provision. I can see no reason for selecting one provision of a potentially unenforceable contract, the arbitration clause, and stamping it with our imprimatur.

I would affirm the judgment.

Bird, C. J., concurred.