[No. B022057. Second Dist., Div. Five. Jan. 22, 1987.]

MARKET INSURANCE CORPORATION, Plaintiff and Respondent, v. INTEGRITY INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Seyfarth, Shaw, Fairweather & Geraldson, Robert L. Ivey and Philip G. Davis for Defendant and Appellant.

Ron R. Goldie and Michael J. Plonsker for Plaintiff and Respondent.

## OPINION

**EAGLESON, J.**—We hold that the arbitration clause in two general agency agreements applies to an insurance agent's action against an insurance company to collect commissions under the contracts. We therefore reverse the trial court's order denying appellant Integrity Insurance Company's petition to compel arbitration.

### FACTS

In two similar 1979 and 1982 contracts, respondent Market Insurance Corporation agreed to act as appellant Integrity Insurance Company's general agent in various insurance transactions. A large part of each written contract contained complex formulas for calculating respondent's commissions on the basis of premiums collected and losses reported. Both contracts also provided that "differences of opinion of interpretation" of the contract "shall be submitted for arbitration to two officers or executives . . . of insurance companies," one to be chosen by each party. The one-page arbitration provision also stated that the arbitrators must meet in Paramus, New Jersey, which is where appellant's corporate headquarters are located.

Contract negotiations were conducted primarily by Mr. Stern, then vice president of appellant Integrity, and Mr. Uritz, president of respondent Market. The two men exchanged drafts of the contracts in which they had changed and corrected terms. Mr. Uritz even made changes in the arbitration clause contained in the 1979 contract. The signatories to the contracts also initialed each page.

Disagreements eventually developed over the payment of commissions. Respondent filed this action for declaratory relief, an accounting, breach of contract, and breach of the covenant of good faith and fair dealing. The central theme in each count was that if all premiums and losses were accounted for, and if the payment formulas were accurately interpreted and applied, then appellant would be found to owe respondent money.

Shortly after respondent filed its California complaint, appellant filed a similar suit against respondent in New Jersey. No further steps were taken, however, in pursuing that action. Instead, appellant answered respondent's California complaint and petitioned for an order compelling arbitration of all disputes between the parties.

Following a hearing on the petition, the trial court issued the following order: "Motion to compel arbitration denied. Whether or not the filing, by Integrity, of the New Jersey litigation amounted to a waiver of the arbitration clause it does not appear, applying the principles of *Victoria* v. *Superior Court* (1985) 40 Cal.3d 734 [222 Cal.Rptr. 1, 710 P.2d 833] that any 'differences of opinion of interpretation of the contract' exist here." This appeal followed.

## DISCUSSION

Appellant's position is based on Code of Civil Procedure section 1281.2. That section provides, in pertinent part, that the court "shall order" arbitration if "an agreement to arbitrate the controversy exists" and has not been "waived" by the petitioner. According to appellant, the arbitration clauses must be enforced because they were intended to encompass all contract-related disputes and have not been waived. Appellant also claims that the commercial setting in which the contracts were negotiated distinguishes this case from *Victoria, supra,* 40 Cal.3d at page 734, which the trial court relied upon to deny the petition.

■ We begin by ascertaining the standard of review. In the absence of conflicting extrinsic evidence, the interpretation of a contract is a question of law for the appellate court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Here, the factual record consists of declarations executed by the individuals who negotiated the contracts. Their versions of the facts differ only as to the intent each harbored towards the scope of the arbitration clause. ■ However, the objective intent as evidenced by the words of the contract, not the parties' subjective intent, governs our interpretation. (*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].) ■ We therefore exercise our independent judgment as to whether the instant disputes are arbitrable.

The general rule in this area is well-settled. California courts traditionally have maintained a strong preference for arbitration as a speedy and inexpensive method of dispute resolution. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 595 [183 Cal.Rptr. 360, 645 P.2d 1192].) ■ To this end, "arbitration agreements should be liberally construed" (*Baker* v. *Sadick* (1984) 162 Cal.App.3d 618, 623-624 [208 Cal.Rptr. 676]), with "doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration [citations]." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].)

The recent case of *Victoria, supra,* 40 Cal.3d at page 734 carves out a limited exception to this rule. There, the court held that an arbitration clause

in a group medical agreement, covering claims "arising from rendition or failure to render services," did not apply to a claim against a hospital for negligent employment of an orderly accused of sexually assaulting a patient. The reasons were two-fold. First, the "scope of the arbitration clause [was] ambiguous." (*Id.* at p. 742.) Its reference to "services" could either be interpreted as excluding the orderly's outrageous action or including the hospital's act of hiring him. Second, the contract had "adhesive characteristics." Specifically, the "small, indistinguishable" arbitration clause was embedded in a "lengthy standard form contract" which the patient-petitioner had no opportunity to negotiate. (*Id.* at p. 743.) The court therefore concluded that general contract principles—such as construing the contract against its maker—outweighed the policy favoring arbitration.

The court made it clear, however, that this result is atypical. The opinion reaffirms the general rule that arbitration agreements which are voluntarily and intentionally made are to be accorded broad scope. In fact, the court emphasized that this rule most readily applies "in the context of a commercial contract devoid of allegations or evidence of adhesion." (*Id.* at p. 744.)

■ In light of these principles, the trial court erred as a matter of law in concluding that the dispute herein is not arbitrable. The two contracts were freely negotiated in a commercial setting by top-level representatives of each company. Even though the wording of each arbitration provision is broad, it is not ambiguous. The parties are sophisticated in contract matters and easily could have limited the description of arbitrable issues had they chosen to do so. It is thus reasonable to conclude that the all-important commission provisions were intended to fall within the scope of the arbitration clauses. This determination is buttressed by the fact that the arbitrators were insurance specialists who would be located near appellant's corporate headquarters and its financial records. Consequently, we follow the basic tenet that questions concerning the scope of arbitrable issues are to be resolved in favor of arbitration.

■ Moreover, we reject respondent's claim that appellant waived its arbitration rights by filing suit on the contracts in New Jersey. It is well established that "the mere filing of a lawsuit," with no "judicial litigation of the merits of [the] arbitrable issues," does not waive a party's contractual arbitration rights. (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 183, 188 [151 Cal.Rptr. 837, 588 P.2d 1261], italics omitted.) Here, no litigation on the merits occurred. After appellant filed its New Jersey suit, respondent moved for an order of dismissal. The New Jersey court ordered that the action be stayed pending the outcome of appellant's California petition to arbitrate the controversy. No waiver occurred.

## DISPOSITION

The order denying arbitration is reversed. Appellant to recover costs on appeal.

Feinerman, P. J., and Hastings, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 15, 1987. Eagleson, J., did not participate therein.