[No. B030796. Second Dist., Div. One. Oct. 6, 1988.]

HERMAN FEIL, INC., Plaintiff and Respondent, v.
DESIGN CENTER OF LOS ANGELES et al., Defendants and
Appellants.

1408

COUNSEL

Valensi, Rose & Magaram, Philip J. Ganz, Jr., Michael L. Thornburg and Nancy N. Potter for Defendants and Appellants.

Gelfand & Hinojosa, Marvin Gelfand and Steven Glaser for Plaintiff and Respondent.

OPINION

HANSON (Thaxton), J.—Petition to confirm an arbitration award (Code of Civ. Proc., § 1285). Petitioner, The Design Center of Los Angeles (hereinafter Design Center) sought confirmation of an arbitration award of $256,489 against respondent Herman Feil, Inc. The arbitrator had awarded $156,863 in general damages to Design Center for Feil's breach of a lease, $87,500 for attorney fees and $12,126 for costs.

Respondent opposed the petition and sought to vacate the arbitration award, contending that its claim of fraud in the inducement of the arbitration provision in the lease should have been determined judicially prior to arbitration but was not, and further argued that the arbitrator failed to determine all of the issues submitted at the arbitration. After hearing respondent's oral argument, the trial court took the matter under submission,

and then granted respondent's petition to vacate the arbitration award while denying Design Center's petition for confirmation. Petitioner sought reconsideration; after hearing, reconsideration was denied.

Petitioner appealed to this court. The parties elected to proceed by appendices in lieu of a clerk's transcript, as permitted by California Rules of Court, rule 5.1. Petitioner's appendix, unfortunately, did not comply with rule 5.1 in that it failed to include either the notice of appeal (a jurisdictional document) or the notice to elect to proceed by rule 5.1. Respondent on appeal did not file any appendix.

Rule 5.1 provides that monetary sanctions may be imposed for presenting this court with an inadequate appendix (subd. (i)(2)). However, in view of respondent's failure to file its own appendix, or direct the attention of this court to the inadequacy in petitioner's appendix, this court sent for and took judicial notice of the superior court file in this case. That file showed that the appeal was taken from the trial court's dismissal of the petition to confirm the award and its denial of reconsideration, appealable orders, and that the appeal was timely, pursuant to California Rules of Court. We therefore proceed to determine the appeal on the merits.

### Factual and Procedural History

Our summary of this litigation is derived from the entire record before us, including the report of evidence taken at the arbitration hearing (11 volumes), lodged with the clerk of this court.

Respondent Feil is a furniture wholesaler and representative for the Bassett Furniture Company. It is jointly owned by Melvin Kaufman and Robert Irish. In late 1981, Feil began negotiations with Design Center's leasing agent, Carleton, for space at the Design Center. After several meetings, Carleton sent Feil a copy of what was referred to as the "DC-I" lease, the lease then governing the rights and responsibilities of the Design Center and its lessees.

The DC-I lease was examined by Feil and sent on to its counsel for review. Feil's counsel approved it as "a standard lease form." The lease did not include an arbitration clause; paragraph 28 of the lease included an attorney fees provision. However, Feil never executed DC-I.

Feil decided to move to Design Center in February 1982, and requested that Design Center send a lease for execution. Unknown to Feil, in January 1982, Design Center had notified existing tenants by letter that the DC-I lease was being changed, and that the new operative lease was DC-II. This lease included, in paragraph 28, an arbitration clause. Design Center

responded to Feil's request for a lease by sending Feil DC-II, with the first page filled in to specify space 8A, comprising 5,380 square feet and an anticipated occupancy date of June 1, 1982.

There is testimony from both Kaufman and Irish in the arbitration proceeding that they had an opportunity to read DC-II, and Kaufman, at least, glanced through it. Kaufman candidly testified in response to questioning by the arbitrator that even if he had ascertained that this lease contained an arbitration clause—which he didn't—"it wouldn't have impressed me either way." Kaufman and Irish did not submit DC-II to their counsel because they thought the second lease was the same as the first. Kaufman executed DC-II and returned it to Design Center on February 23, 1982.

There were some details concerning square footage which caused DC-II to be amended, and that lease was reexecuted by Kaufman on April 7, 1982. Feil occupied 8A at the Design Center for the next three years of the ten-year term without incident. In early August 1985, Feil became two months delinquent in its rental obligation and was contacted by Design Center's assistant manager Kennedy concerning payment. Kennedy was informed payment would be forthcoming, that there was a cash flow problem.

However, Feil had leased space at the Los Angeles Mart in May 1985. It is not clear when Feil made the decision to vacate 8A at the Design Center. There was testimony at the arbitration proceeding by Henry Brandler, the leasing agent for the Los Angeles Mart, that when leasing space at the Los Angeles Mart the Feil principals told him they were not planning to keep the space at the Design Center. In September 1985, Feil served the Design Center with a civil complaint for rescission of DC-II, and vacated 8A by November 1985.

On November 13, 1985, plaintiff Feil filed its first amended complaint for damages against its lessor, alleging breach of contract, fraud, and negligent misrepresentation with respect to DC-II. The complaint also sought injunctive relief, rescission, and punitive damages. Named as defendants were Design Center, also known as Qvale and Qvale, a partnership, Ragnar C. Qvale, an individual, and Kjell Qvale, an individual, and Does.

In the third cause of action, Feil charged that the Design Center had knowingly presented DC-II to Feil's principals, "implicitly and fraudulently represent[ing] that the Lease being executed was the same as the Lease submitted for review." It is alleged that DC-II contained "an oppressive arbitration clause" and that Feil would never have agreed to such a provision had it known it was contained within DC-II. It is alleged that Design Center intended to defraud Feil and had the "intent to fraudulently induce [plaintiff Feil] to enter into the Lease with an arbitration clause." The

fourth cause of action also pleaded fraud, i.e., promises by Design Center concerning future efforts of the Design Center to expand, etc.; that Design Center never intended to perform; and it was alleged that these false promises were intended to, and did, induce Feil to enter into the lease.

By the time the first amended complaint was filed, Design Center had demanded that Feil arbitrate the dispute, pursuant to article 28 of DC-II. On December 20, 1985, a hearing was held on Feil's order to show cause why arbitration should not be stayed, and the matter was taken under submission. We have no reporter's transcript of these superior court proceedings, but a minute order dated December 20, 1985, was issued, denying Feil the stay. The minute order declared that "The arbitration clause 'may reasonably be construed to encompass the fraud clause' herein. See *Ericksen, Arbuthnot, et al.* v. *100 Oak Street* 35 Cal.3d 312."

The documents submitted by the parties in support of and in opposition to the motion made clear that Feil was claiming fraud in the inducement of *the arbitration provision* as well as the entire lease, and that the court was being asked to make a judicial determination of whether arbitration could proceed under these circumstances.

The record shows that Design Center then petitioned to compel arbitration, pursuant to Code of Civil Procedure section 1281.2, and stay judicial proceedings. This was heard in January 1986 by the same judge who had considered Feil's request for a stay. By minute order dated January 28, 1986, Design Center's petition was granted, without further citation of authority.

Since an order compelling arbitration is not appealable, findings were not required in the superior court. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775, 84 A.L.R.3d 343]). Feil petitioned this court by writ; the writ petition was denied.

Prior to the commencement of arbitration, Feil asked the arbitrator assigned to this matter to bifurcate proceedings and hear the fraud in the inducement issue first; it was suggested that if the arbitrator found merit in Feil's claim of fraud in the inducement, then the matter could then be sent back to the superior court for litigation.

The arbitrator declined the request for bifurcation, noting that the superior court's order compelling arbitration implicitly determined that Feil's claim need not be litigated in the superior court but could be determined in the arbitration proceeding. Feil interpreted the arbitrator's refusal to bifurcate as a determination that the fraud in the inducement of the arbitration

clause claim would not be considered in arbitration because it had already been determined by the superior court.

The arbitration record, however, shows that Feil, while repeatedly emphasizing its position that the arbitrator was refusing to hear all of the issues, presented evidence on the claim concerning the fraud asserted with respect to the arbitration clause. The record is replete with testimony concerning the circumstances under which Kaufman and Irish executed the DC-II lease. As indicated, the arbitrator found that Feil had breached the lease agreement with the Design Center and was obligated for the amount of the arbitration award. The arbitrator made no finding concerning fraud in the inducement of either the arbitration clause or any other provision of the lease, or of the lease generally.

Design Center returned to the superior court with a petition to confirm the arbitration award, pursuant to Code of Civil Procedure section 1285. Feil opposed the petition and sought to vacate the award on the ground that it had been denied due process by both the superior court and the arbitrator because it had not been given the opportunity to litigate its claim that it had been induced by fraud to execute the DC-II lease containing the arbitration provision.

The record shows that due to a calendaring error, Design Center was not present at the hearing on the motion to confirm. The informal notes indicating the proposed disposition of Feil's petition to vacate showed that denial was recommended. Feil advised the court at length that the arbitrator had refused to hear the issue of fraud in the inducement of the arbitration provision. The trial court took the matter under submission, but issued a minute order granting Feil's petition to vacate the award.

The minute order, dated August 13, 1987, declares that "Petition to confirm the arbitrator's award is denied, the Court finding that the issue of fraud in the inducement was not directly, or by implication, decided by Judge O'Brien on 12/20/85, at the OSC hearing to stay arbitration. The Court finds that Judge O'Brien found and ruled that the issue of fraud in the inducement was one for arbitration pursuant to *Erickson*, 35 Cal.3d 312. The Court finds further that the arbitrator refused to determine this issue at the time of arbitration although requested by the parties to do so. Petition to vacate arbitrator's award is granted. The Arbitration award is vacated."

Petitioner Design Center moved for reconsideration, citing the evidentiary transcript of proceedings in arbitration to dispute Feil's claim that the arbitrator had refused to hear the matter. Reconsideration was denied, and this appeal followed.

## Standard of Review

On appeal, respondent Feil contends that we should approach the task of review by applying the "substantial evidence" rule to the trial court's interpretation of Judge O'Brien's first minute order in this case as well as its apparent interpretation of the arbitrator's position in denying respondent's request to bifurcate the arbitration proceedings. These, respondent claims, are "factual" matters.

Respondent is wrong. ■ Absent extrinsic evidence, interpretation of writings, whether a contract, a lease, a will, a statute, pleadings or minute orders, has long been held to be peculiarly an appellate function. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) It is not only an appellate function, it is one where the appellate court exercises its independent judgment. (*Ibid*; and see *Market Ins. Corp.* v. *Integrity Ins. Co.* (1987) 188 Cal.App.3d 1095, 1098 [233 Cal.Rptr. 751].) In this situation, a reviewing court need not defer to the trial court.

## Discussion

### I.

Preliminarily, we note that the problem which arose in the trial court in this case derives from an issue of law which has caused considerable consternation in both federal and state courts.

The problem is one of logic as opposed to practicality, and involves basic legal propositions in apparent conflict with one another. It is clearly and thoroughly explored in *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312 [197 Cal.Rptr. 581, 673 P.2d 251], in both the majority opinion and in the dissent.

■ One basic proposition is that arbitration, as defined both in the federal statute and our state statute, is a procedure for resolving disputes which arises from contract; it only comes into play when the parties to the dispute have agreed to submit to it. (35 Cal.3d at p. 327). When a party claims, as Feil has throughout this litigation, that it executed the lease containing the agreement to arbitrate because of fraudulent inducement, the contractual underpinning of the arbitration procedure is squarely at issue, and as a matter of logic the asserted absence of contractual consent renders arbitration, by its very definition, inapplicable to resolve the issue.

■ The cases are legion, however, which hold that arbitration is strongly favored, as a matter of public policy, because it is a speedy and inexpensive method of resolving disputes. (35 Cal.3d at p. 322; *Doers* v. *Golden Gate*

*Bridge etc. Dist.* (1979) 23 Cal.3d 180 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Keating* v. *Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192].) *Ericksen* (*supra,* 35 Cal.3d 312) addresses, as have other courts, the issue presented where a party claims that the contractual agreement, including the agreement to arbitrate, was fraudulently induced and thereby precludes arbitration. ■ As noted in *Ericksen,* if arbitration can effectively be side-stepped by a party's claim of fraud in the inducement, this circumstance would greatly curtail the use of arbitration as an aid to already heavily burdened courts.

*Ericksen* involved a claim of fraud in the inducement relative to the performance provisions of a lease, not to the arbitration clause contained therein. The fraud assertedly related to promises made by the lessor without the intent to perform, but with the intent of inducing the Ericksen law firm to execute the lease document. ■ Distinguishing between the two types of asserted fraud, the California Supreme Court held that "claims of fraud in the inducement of the contract (*as distinguished from claims of fraud directed to the arbitration clause itself*) will be deemed subject to arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d 312, 323, fn. omitted, italics added.) *Ericksen* also concluded that our statutory provision empowering a court to compel parties to arbitration, Code of Civil Procedure section 1281.2, was substantially similar to the federal statute, and to other state statutes in jurisdictions which had adopted the same approach to fraud in the inducement problems, and thus the reasoning of the federal courts, as well as other state courts, was persuasive. (*Ericksen* relied on such cases as *Robert Lawrence Company* v. *Devonshire Fabrics, Inc.* (2d Cir. 1959) 271 F.2d 402, cert. dism. (1960) 364 U.S. 801 [5 L.Ed.2d 37, 81 S.Ct. 27]; *Prima Paint* v. *Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]; and particularly on *Weinrott* v. *Carp* (1973) 32 N.Y.2d 190 [11 A.L.R.4th 774].)

■ As was enunciated in *Moses H. Cone Memorial Hosp.* v. *Mercury Const.* (1983) 460 U.S. 1, 24-25 [74 L.Ed.2d 765, 785, 103 S.Ct. 927], "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, *whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.*" (Italics added.) Our state court, in *Ericksen,* also declared that "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d 312, 323.)

■ One major exception to the *Ericksen* rule favoring arbitrability of fraud claims has emerged in the case law, i.e., the so-called permeation doctrine. The rule is that where the fraud claims have "permeated the entire contract including the arbitration clause," the arbitration agreement is vitiated and the entire matter requires judicial determination. (*Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19, 27 [136 Cal.Rptr. 378]; see also *Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011 [225 Cal.Rptr. 895]). As was observed in *Ericksen,* however, the "permeation" claim is applicable only where the party seeking to avoid arbitration denies having agreed to *anything.* (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street, supra,* 35 Cal.3d 312, 323, fn. 8.) In both *Main* and *Ford,* there were allegations of fraud practiced in the context of confidential relationships and the complaints ranged far beyond issues reasonably encompassed by the arbitration clauses involved.

## II.

■ In the case at bench, of course, Feil has repeatedly distinguished in its papers before the court and in arbitration the two types of fraud in the inducement which it claims were practiced upon it by Design Center. One refers to promises made without intent to perform (i.e., performance fraud) as opposed to the other, specific assertion of fraud in the inducement as to the *arbitration clause itself.*

Neither party to this appeal has addressed the key issue directly, i.e., whether or not, under our state arbitration statute, a claim specifically charging fraud as to the arbitration clause itself may be referred to arbitration for disposition or must be traditionally determined by litigation in the trial courts. The holding in *Ericksen* specifically left this issue undecided.

The result of this lack of resolution is demonstrated in the record before us. The case at bench is not at all complex, despite Feil's attempts to make it so. Feil executed the DC-II lease and operated pursuant to its terms for three years. Finding the arrangement financially burdensome and unacceptable for a variety of other reasons, it breached the lease.

Discovering that its counsel had reviewed one document but that Feil had executed a subsequent version containing an arbitration clause, Feil charged Design Center with fraud; the "fraud" apparently consisted of the Design Center's sending to Feil, at Feil's request, the DC-II lease then in use by Design Center.

The circumstances suggest, at best, a mistake by Feil, rather than a conspiracy by anyone. Feil executed the lease without observing the *arbitra-*

*tion* provision. There is *no* evidence that the Design Center intended to defraud Feil. There is *no* evidence that the arbitration provision would have caused Feil to change its mind about occupation of space 8A. There *is* substantial evidence that Feil decided to go to the Los Angeles Mart early in 1985 and gambled that it could avoid or at least blunt the consequences of breaching its lease with Design Center.

There is nothing pervasive (i.e., "permeating") about the asserted fraud in this situation, no relationship of confidence or trust as between an investor and a brokerage house (as in *Main, supra*, 67 Cal.App.3d 19), but rather a lease executed after arms length negotiation. The case was a typical commercial dispute for which arbitration was admirably suited, to render by fast and efficient means, a fair determination on the merits.

The "long and tortuous journey" so aptly described by the New York court in *Weinrott, supra,* "in which the unsupported allegation of fraud 'laboriously worked its way through the New York court system' and finally 'fell exhausted at the Court of Appeals,'" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street, supra,* 35 Cal.3d 312, 321) is one which the judicial system in general and the arbitration statute in particular seeks to avoid.

## III.

Code of Civil Procedure section 1286.2 provides, in pertinent part, that "the court shall vacate the award if the court determines that:

"(a) The award was procured by corruption, fraud or other undue means;

"(b) There was corruption in any of the arbitrators;

"(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator;

"(d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or

"(e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

■ It has long been established that the courts—both trial and appellate—have very limited powers of review of an arbitration award. Neither

court exercises an independent function in so doing. (*Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443 [157 Cal.Rptr. 167]; *Greenfield* v. *Mosley* (1988) 201 Cal.App.3d 735 [247 Cal.Rptr. 314].) The grounds for vacating an award, set forth by statute, are only those enumerated therein; they do not even include claimed errors by the arbitrators in determining questions of fact or law. (*Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081 [213 Cal.Rptr. 62].)

■ In *Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838 [170 Cal.Rptr. 349], the Court of Appeal was considering a claim that the arbitrator had failed to determine all the issues submitted (as proscribed by subdivision (e) of the statute). While it stated that the record did not support the claim made in that case, the court made the general observation that a claimant who challenges an award on such a basis has a heavy burden. "First, it is presumed that all issues submitted for decision have been passed on and resolved . . . . [Citations.] [¶] Second, . . . the party attacking the award must demonstrate that a particular claim was expressly raised at some time before the award [citation], and that the arbitrator failed to consider it [citation]. [¶] Third, the failure of an arbitrator to make a finding on even an express claim does not invalidate the award, *so long as the award 'serves to settle the entire controversy'* [citation]. . . . [¶] Finally, there is the principle that the merits of the controversy are for the arbitrator, not for the courts. . . ." (*Id.* at pp. 842-843; italics added.)

■ As we understand it, respondent Feil did not challenge below the basic finding of breach of the lease nor of the amount owed, pointed to no error appearing on the face of the arbitration award itself. Respondent's sole claim was that its claim of fraud in the inducement as to the arbitration clause in the lease was not considered by the trial court nor by the arbitrator, and was heard in neither forum, and that Feil's due process rights were thereby violated.

We do not agree. Code of Civil Procedure section 1281.2 provides that the court "shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement. . . ."

In this case, the trial court—Judge Robert O'Brien—determined *twice* that Feil's claims of fraud could be arbitrated; we note that a "judicial determination" does not necessarily mean a trial on the merits; many issues of law and fact are determined by motion. O'Brien's determinations were

then reviewed on a writ taken to this court, and no error requiring the intervention of this court was found.

When the case was arbitrated, at no time did the arbitrator refuse to hear evidence on any fraud issue; his refusal to bifurcate the matter was not a refusal to consider the issue.

The record shows that Feil did present evidence on the fraud issues at arbitration, notwithstanding Feil's occasional efforts during the arbitration proceedings to make it appear otherwise and notwithstanding Feil's oral presentation to the trial court when it sought to vacate the award. As was explained in *Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 522-523 [212 P.2d 233], "[a] decision simply that one of the parties should pay the other a sum of money is sufficiently determinative of all items embraced in the submission."

### DISPOSITION

The judgment (order) is reversed. The case is remanded and the trial court is directed to grant petitioner Design Center's petition to confirm the award, and to dismiss respondent Herman Feil, Inc.'s petition to vacate the award. Appellants are to recover costs in this court.

Spencer, P. J., and Ortega, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 22, 1988.