[No. A046523. First Dist., Div. Four. Dec. 11, 1990.]

ALISON KING, Plaintiff and Appellant, v.
PRUDENTIAL-BACHE SECURITIES, INC., et al., Defendants and
Respondents.

**COUNSEL**

Clifford K. Sessions for Plaintiff and Appellant.

Keesal, Young & Logan, Peter R. Boutin and Brian L. Zagon for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—Plaintiff and appellant Alison King (appellant) appeals from an order and judgment granting the petition of defendants and respondents Prudential-Bache Securities, Inc., Eugene Stansbery, and Carrington Clark, Jr. (respondents), to confirm an arbitration award. Appellant contends: (1) The question of whether the contract containing an arbitration clause was induced by fraud should have been decided by the superior

court and not submitted to the arbitrator; and (2) the arbitration agreement should not have been enforced because fraud permeated the entire contract including the arbitration clause. We affirm.

## I.  STATEMENT OF FACTS AND PROCEEDINGS

On December 4, 1985, appellant filed a complaint for wrongful termination and related causes of action against respondents and her former employer Merrill Lynch, Pierce, Fenner & Smith, Inc.

On January 24, 1986, respondents filed a petition for an order compelling arbitration and staying proceedings. The petition alleged that in conjunction with her employment by respondents, appellant executed an "Employment Agreement" and a "Uniform Application for Securities Registration" on August 20, 1984. Both documents contained arbitration clauses.

Appellant opposed the petition on the ground that she was fraudulently induced to execute the agreements. In a declaration, she averred as follows. Respondents attempted to recruit her as a security broker/account executive while she was employed by Merrill Lynch. On July 20, 1984, she signed a written confidential employment agreement with respondents which did not contain an arbitration clause. On August 15, 1984, appellant was terminated from Merrill Lynch.

On August 20, 1984, respondents told her to sign "a host of forms" so that her employment could immediately commence. "Because of the rush it was not possible for [appellant] to thoroughly examine the contents of the documents." She noticed that one document was entitled "Employment Agreement" and she asked about the purpose of signing another such agreement.

She was assured that "this was routine and that signing it would in no way compromise [her] rights under [her] July 20, 1984, contract, which would remain valid and binding. [She was] told that signing the 'Employment Agreement' would facilitate and protect the confidentiality of [her] real employment agreement as set forth in the letter of July 20, 1984. [She was] also reminded that Paragraph 10 of the July 20, 1984, confidential employment contract expressly required that [she] cooperate in maintaining its secrecy. In reliance upon [respondents'] representations that it would not be relied upon as having any legally binding effect, and under pressure to be cooperative, [she] signed the August 20, 1984, dummy 'Employment Agreement.'" A declaration of respondent Stansbery contradicted the version of

the facts set out by appellant and basically stated that all parties agreed that the August 20 contract was the legally binding agreement.

Paragraph 7 of the August 20 "Employment Agreement" is entitled "Remedies." In the same large typeset used in the rest of the agreement, it states: "Any claim or controversy arising out of this Agreement, the interpretation thereof, shall be settled by arbitration under the then prevailing Constitution and Rules of the New York Stock Exchange, Inc. Judgment based upon the decision of the arbitrators may be entered in any court having jurisdiction thereof." Respondents never allowed appellant to commence her employment.

An order by Judge Maxine M. Chesney filed on April 8, 1986, declared: "The Court having read and considered the papers in support of and in opposition to the Motion, and the matter having been argued and submitted, and good cause appearing therefor, [¶] IT IS HEREBY ORDERED that [respondents'] Petition to Compel Arbitration of this case in accordance with the Arbitration Rules of the New York Stock Exchange at San Francisco, California, and to Stay Proceedings Pending Arbitration are granted."

On August 27, 1986, appellant filed a motion to dissolve or modify the stay of proceedings, based on the same allegations of fraud as stated above. On October 22, 1986, Judge Chesney denied such motion after "having read and considered the papers filed in support of and in opposition to the Motion." On December 17, 1986, in *King* v. *Superior Court*, A036760, this court denied appellant's petition for a writ of certiorari and/or prohibition challenging the order compelling arbitration.

We were not supplied with a complete record of the arbitration proceeding. However, the appellate record does contain some items from the arbitration. On May 8, 1987, appellant's then attorney presented her claim to the arbitrators in a letter which included the following: "King further requests that the arbitrators rule on the arbitrability of each of her claims and upon their authority to order each item of relief requested above." At page 545 of the reporter's transcript of the arbitration, dated October 20, 1988, the chairperson of the panel of arbitrators asked if appellant "had a fair and full opportunity to present [her] case" and if she and her attorney were satisfied that they had done so. The attorney replied, "I believe we have . . . . Yes. We have, I believe, presented the evidence that we reasonably have available to us."

A decision by a majority of the panel of arbitrators, dated October 20, 1988, declares that the arbitrators "having heard and considered the proofs

of the parties, have decided and determined that in full and final settlement of the above matter, the claims of the claimant are hereby dismissed in all respects." Costs in the amount of $4,500 were assessed against respondent Prudential-Bache Securities, Inc.

On January 27, 1989, appellant, acting pro se, filed a petition to correct and confirm the arbitration award. She argued that the arbitrators ruled that her "claims were not arbitrable and, instead of granting or denying them, must therefore be dismissed." Appellant requested that the award be corrected to state that the claims were not subject to arbitration. On February 15, 1989, respondents filed a petition pursuant to Code of Civil Procedure section 1285 for confirmation of the arbitration award and for a judgment thereon.

After appellant retained her present attorney, declarations repeating the above stated allegations of fraud in the inducement were filed on her behalf. Judge Stuart R. Pollak granted judgment to respondents by an order which includes the following: "The court having read and considered the papers in support of and in opposition to the Petitions . . . . [¶] The Court finds and determines that [appellant's] claims of fraud in the inducement were previously rejected by the Honorable Maxine Mackler Chesney . . . . [¶] The Court further finds and determines that even if [appellant's] fraud in the inducement argument had not already been decided by a judge of this court, there is no credible evidence of fraud in the inducement of the arbitration clause contained in the Agreement executed by [appellant]."

## II. FRAUD IN INDUCEMENT ISSUE

■ Appellant contends that the question of whether the contract containing an arbitration clause was induced by fraud should have been decided by the superior court and not submitted to the arbitrator. This contention lacks merit.

In *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251] (*Ericksen*), the Supreme Court held that claims of fraud in the inducement of a contract containing an arbitration clause—as distinguished from claims of fraud directed to the arbitration clause itself—are to be decided by the arbitrator and not by a court.

The rule of *Ericksen, supra,* was applied in *Herman Feil, Inc.* v. *Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406 [251 Cal.Rptr. 895] (*Feil*). In late 1981, a commercial tenant agreed to rent real property from,

and approved the lease proposed by, a landlord, but the lease did not contain an arbitration clause. However, the tenant did not execute the lease. In February 1982, the tenant decided to move into the space and requested a lease for execution. Unknown to the tenant, the landlord had changed its lease form and the new form contained an arbitration clause. The tenant signed the lease "because [he] thought the second lease was the same as the first." (*Id.*, at p. 1411.)

There was a disagreement and the tenant filed a complaint in the superior court. The landlord demanded that the dispute be submitted to arbitration. A hearing was held on the tenant's order to show cause why arbitration should not be stayed. On December 20, 1985, the superior court ruled in a minute order: " 'The arbitration clause "may reasonably be construed to encompass the fraud clause" herein. See *Ericksen* . . . .' " (*Feil, supra,* 204 Cal.App.3d at p. 1412.) The appellate court did not have a reporter's transcript of these proceedings, but documents in the record "made clear" that the superior court was being asked to restrain arbitration on the ground that the agreement was induced by fraud. A subsequent petition by the landlord to compel arbitration was granted by the same judge by a minute order dated January 28, 1986, "without further citation of authority." (*Ibid.*) The tenant sought review of the order by a petition to the appellate court for a writ. The petition was denied. (*Ibid.*)

The arbitrator heard evidence regarding the assertions of fraud and found that the tenant had breached the lease. No finding was made "concerning fraud in the inducement of either the arbitration clause or any other provision of the lease, or of the lease generally." The landlord filed a petition in the superior court to confirm the arbitration award, pursuant to Code of Civil Procedure section 1285. The tenant argued that he had been denied due process by the superior court and the arbitrator, because he had not been given the opportunity to litigate his claim of fraudulent inducement to execute the lease with the arbitration provision. The superior court ruled in favor of the tenant. (*Feil, supra,* 204 Cal.App.3d at pp. 1412-1413.)

The Court of Appeal reversed. It held that the superior court "determined *twice* that [the tenant's] claims of fraud could be arbitrated; . . . a 'judicial determination' does not necessarily mean a trial on the merits; many issues of law and fact are determined by motion. [Judge] O'Brien's determinations were then reviewed on a writ taken to this court, and no error requiring the intervention of this court was found." Moreover the record disclosed that the issue of fraud in the inducement was heard and decided by the arbitrator. (*Feil, supra,* 204 Cal.App.3d at pp. 1418-1419, italics in original.)

The factual and procedural setting of *Feil* is remarkably similar to the instant case. Accordingly, we conclude that as in *Feil*, the superior court and the arbitrators herein properly decided the issue of fraudulent inducement.

### III. Permeation Issue

Appellant contends that the arbitration agreement should not have been enforced because fraud permeated the entire contract including the arbitration clause. This contention lacks merit.

It appears that the first California case to expound the "permeation doctrine" was *Main* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1977) 67 Cal.App.3d 19 [136 Cal.Rptr. 378] (*Main*), which held that "where it is alleged that fraud either induced the arbitration clause itself, or permeated the entire agreement including the arbitration clause, that issue will be determined judicially and not by arbitration." (*Id.*, at p. 27.) The allegations which sufficiently established permeation were that an aged conservator of the estate of an invalid husband, who was unschooled in business, placed complete confidence in a broker and, at his request, signed a contract giving him complete control of her financial affairs. The contract contained an arbitration clause which was in fine print on the reverse side of the document. (*Id.*, at pp. 30-31.)

*Ericksen, supra,* 35 Cal.3d 312, 323, footnote 8, approved the permeation doctrine but held that it did not apply where the party claiming fraud was a law firm. Further, the law firm did not deny "ever agreeing to anything" and was aware of the arbitration provision. The contract in question was a lease of real property.

*Ford* v. *Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1025-1027 [225 Cal.Rptr. 895] (*Ford*), held that fraud permeated a contract between a brokerage firm and a customer who signed the contract because he was told to do so by the psychotherapist business adviser that "dominated" him. The contract enabled the business adviser to gain control of the customer's wealth and contained an arbitration clause.

*Feil, supra,* 204 Cal.App.3d at page 1417, approved the permeation doctrine but held there "is nothing pervasive (i.e., 'permeating') about the asserted fraud in this situation" involving a dispute over a commercial lease. One factor relied on by the court was the absence of any evidence that the tenant would have changed his mind about entering into the lease if he knew about the arbitration provision.

The recent case of *Strotz* v. *Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208 [272 Cal.Rptr. 680] (review den.) (*Strotz*), involved a contract between a brokerage firm and a customer. After reviewing the above cases and precedents cited therein, the court rejected the permeation doctrine. (*Id.*, at pp. 212-217.) However, it approved the results in *Main, supra,* and *Ford, supra,* on the basis of an alternate theory applied in *Ford.* Therein, the plaintiff customer alleged that "at the time he signed the agreements, he was under the complete domination and control of one of the defendants and that if he in fact signed the agreements he did not know what they were and did not know what their effect was." Thus, "the complaint sufficiently alleged fraud in the inception, factum or execution to render the agreement to arbitrate void for lack of mutual assent." (*Strotz, supra,* 223 Cal.App.3d at p. 217.) Determination of whether such fraud exists is for a court and not an arbitrator. (*Id.*, at pp. 217-218.)

In *Strotz, supra,* the alleged fraud was that the customer signed the contracts containing an arbitration clause because she was assured by her broker that the contracts simply were standard documents necessary to open her account, that they did not affect her legal rights, and that it was not necessary to read them. She further contended that if she were aware that the documents gave the broker the right to sell her stock to cover losses and contained an arbitration clause, she would not have signed them. (*Id.*, 223 Cal.App.3d at pp. 211, fn. 2, 218.) The court found sufficient allegations of fraud in the inception because the customer alleged that the broker "deceived her as to the nature and effect of the documents she was signing and that had she known the documents contained an agreement to arbitrate, she would not have signed the documents." (*Id.*, at p. 218.)

The present case is more similar to *Ericksen* and *Feil* than to *Main, Ford* and *Strotz.* Appellant is not a helpless investor lost in the world of stocks and bonds who can be, and is, easily dominated as were the customers in *Main, Ford,* and *Strotz.* She is an experienced broker who had been employed by Merrill Lynch. Further, she was aware that the document was an "Employment Agreement" as it was so labelled. She did not allege that she would have refused to sign if she knew it contained an arbitration clause. Neither does she allege that the absence of such a clause was something she bargained for with respondents. Rather, the circumstances under which she signed the August 20 contract seem almost identical with those under which the second lease was signed in *Feil.* In both cases, experienced, knowledgeable parties signed a contract under the mistaken belief that it merely repeated the terms to which they had earlier agreed.

In view of our decision, we find it unnecessary to discuss whether the permeation doctrine is a valid precept of law.

## IV.  DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

Perley, J., and Reardon, J., concurred.

A petition for a rehearing was denied January 10, 1991, and appellant's petition for review by the Supreme Court was denied March 28, 1991. Mosk, J., was of the opinion that the petition should be granted.